# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 22, 2014 Session

## ERIC VISLOSKY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bradley County**
**No. 12-CR-141      Amy A. Reedy, Judge**

**No. E2013-01117-CCA-R3-PC - Filed July 31, 2014**

The petitioner, Eric Vislosky, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel and that his guilty plea to Class B sexual exploitation of a minor was therefore unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Stephen D. Crump, Cleveland, Tennessee, for the appellant, Eric Vislosky.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Robert Steven Bebb, District Attorney General; and Stephen M. Hatchett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On April 18, 2011, the petitioner entered a best interest guilty plea in the Bradley County Criminal Court to sexual exploitation of a minor, a Class B felony, in exchange for a Range I sentence of eight years at 100% in the Department of Correction. The petitioner's conviction was based on his violation of Tennessee Code Annotated section 39-17-1003, which makes it a Class B felony for a person "to knowingly possess material that includes a minor engaged in: (1) [s]exual activity; or (2) [s]imulated sexual activity that is patently offensive[,]" when "the number of individual images, materials, or combination of images and materials . . . exceeds one hundred (100)." Tenn. Code Ann. § 39-17-1003(a), (d)

(2010). The prosecutor recited the facts upon which the State would have relied had the case proceeded to trial:

> On the date alleged in the indictment the Bradley County Sheriff's Office executed a search warrant at the residence where [the petitioner] was staying. They sought the search warrant after the lady that lived there brought to the Sheriff's Department a thumb drive that belonged to [the petitioner]. On the thumb drive, upon executing the search warrant officers found numerous photographs of images that we believe a jury would find to constitute child pornography. There were over a [sic] 100 images of this child pornography on the thumb drive and the [petitioner] upon being brought to the Sheriff's Department for questioning waived his right to an attorney. He admitted that the thumb drive belonged to him and he also admitted that he did know that the images of child pornography were on his thumb drive and he admitted that he had moved them there for safe keeping from his laptop computer. And so that would be the images and the [petitioner's] statement would be what we would present to the jury tomorrow, your Honor.

On April 5, 2012, the petitioner filed a petition for post-conviction relief in which he alleged that he was denied the effective assistance of counsel and entered an unknowing and involuntary guilty plea. Specifically, he alleged that his counsel was deficient in his representation, thereby leading him to enter an unknowing and involuntary plea, by failing to properly examine the evidence and failing to seek an independent review of the thumb drive to determine if it contained more than 100 images of child pornography sufficient to support his Class B felony conviction.

At the evidentiary hearing, the petitioner's expert legal witness, James F. Logan, Jr., testified that he had been practicing law in Cleveland since 1970 and had extensive experience with criminal defense, including "[n]umerous sexual offenses." He said he had handled five sexual exploitation of a minor cases in federal court within the past five years and believed himself to be "about as experienced as anybody in . . . southeast Tennessee in the handling of such cases." He described the steps he takes in reviewing the evidence and determining a trial strategy in such a case and said that one step that often is overlooked is determining exactly how many images are involved and whether those images constitute true violations of the statute. He testified that he had reviewed the evidence in the petitioner's case and that it consisted of images in 174 frames, with the frames consisting of "multiple collages," and each collage of "28 different photographs." He said that 72 of those images focused on body parts or showed actual sexual activity involving children and thus were "unquestionably violations of the statute." In addition, there were two others that "potentially could be considered to be without question a violation of the statute." The

remainder of the images, however, were of "nudist colonies" and "family gatherings" at nudist colonies or beaches. These latter images, Logan believed, were ones that the trial court might have ruled as a matter of law did not constitute violations of the statute, had trial counsel raised the issue before the court.

On cross-examination, Logan acknowledged that the petitioner, with three prior burglary convictions, would have been sentenced as a Range II offender had he been convicted of Class C felony sexual exploitation of a minor. He testified that, had it been his case, he would have counted the images. He further testified that he believed "the reasonable standard of practice" for any attorney in such a case would be to count the images.

Detective J.P. Allman of the Bradley County Sheriff's Department testified that, based on Logan's definition of child pornography, he considered that there were over 100 images of child pornography involved in the case. He further testified that he and trial counsel had gone through the images together. On cross-examination, he testified that the images on the thumb drive included pictures of digital, penile, and oral penetrations of small children, pictures of nude children, and "pictures of children mixed in with adults nude."

The petitioner testified that he told trial counsel that he was not guilty of the offense but that counsel kept pointing out to him throughout his representation that he was guilty, no matter what he thought. He said that counsel advised him to take the State's plea offer, telling him that his choice was either to accept the plea or go to trial and receive twelve years, or possibly more, at 100%. He said counsel told him that he had counted the images and that there were 119 that were "verified" as a violation of the statute, 49 that were "in between," and 19 images that did not qualify as child pornography. He stated that counsel told him that "[j]ust being naked" was enough for a photograph to violate the statute – that it did not have to depict "any penetration or touching or anything."

The petitioner testified that he still would have pled guilty had he been told there were only 72 images of child pornography instead of 119. He explained:

> And I was going to a jury trial all along but my mind was changed at the last moment and I figured, you know, just go ahead and take this and come back and try to fight it because I was not getting my counsel the way that I'm suppose to and so I'm going to get it some other way.

The petitioner complained that trial counsel cursed him "quite a few times," got angry at him, and was in general "bullheaded" and "stubborn." He said he still believed that counsel had not counted the number of images but that he should have and that his failure to do so led him to plead guilty to a Class B felony.

On cross-examination, the petitioner testified that he was unhappy with counsel's representation and wanted a different attorney, but counsel would never let him go back to court to "drop him." He, therefore, decided to plead guilty and proceed with a later post-conviction petition, as he saw "no other way to go to . . . getting assistance of counsel." He acknowledged, however, that he said nothing to the trial court about being unhappy with counsel or wanting to go to trial at the plea colloquy, even after counsel told the court that the petitioner disagreed with the prosecutor's recitation of the facts but was pleading in his best interest. He also acknowledged that counsel informed him that, due to his prior convictions, he could receive more time than his negotiated plea deal should he be convicted at trial.

Trial counsel testified that he had been with the public defender's office for over six years, had handled child pornography cases in the past, and had a firm understanding of the law regarding the petitioner's offense. Because he wanted to make sure that there were over 100 images on the thumb drive, he reviewed all the images on the device and found over 100 images "of what appeared to be child pornography." In addition to the numerous images of children in sex acts, there were "a lot of images" of naked children on a beach or in public places who were engaged in "potentially provocative acts or provocative poses."

Trial counsel testified that he discussed the images with the petitioner, including his concerns that there were no images of nude adults on the thumb drive but instead only children. He said that the petitioner told him that the images were not his, despite the fact that he had admitted to law enforcement officers that he was the one who placed child pornography on the thumb drive. Counsel explained that this was the reason he informed the court at the plea colloquy that the petitioner had a different version of events and wanted to enter a best interest plea. He said the petitioner told him that he planned to delete the files at a later time. When he asked him why he had not immediately deleted them when he found the thumb drive, the petitioner told him that he had "a very big interest in nudism." He then asked why, if he was interested in nudism, there were no images of nude adults, but the petitioner was unable to answer his question. Trial counsel testified that, based on his experience and his review of the thumb drive, he believed there was a chance that the petitioner would be convicted of a Class B felony at trial.

Trial counsel testified that he discussed with the petitioner the plea bargain offered by the State, the risks inherent in a jury trial, and the petitioner's criminal record of six prior convictions, including three felonies. Counsel agreed that the petitioner would not have been sentenced as a Range I offender had he been convicted of a Class C felony and that his sentencing, given his criminal record, would not have been at the low end of the range. He said that the basis of the petitioner's complaint against him with the Board of Professional Responsibility, which counsel mentioned at the plea colloquy, was that the petitioner wanted

to receive copies of the images on the thumb drive and wanted a better offer from the State. Counsel said he plainly asked the petitioner if he still wanted him to represent him, and the petitioner answered "yes." He stated that the petitioner never expressed any intention of going to trial but instead "always wanted whatever the best plea was." He said he never cursed the petitioner or pressured or coerced him into accepting the plea.

On cross-examination, trial counsel reiterated that, in his opinion, there were over 100 images on the thumb drive that would violate the statute. He said he did not take any notes as to which particular photographs violated the statute and did not recall exactly how many photographs depicted actual sex acts. He said he did not tell the petitioner that any images of naked children would constitute a violation of the statute. Instead, he recalled having discussed the images of nude children on the beach, some of which were in provocative poses and some of which were not, and how the images "could be taken in context to a jury with relevance to all these other images that were children in sexual acts with other children and adults."

On April 5, 2013, the post-conviction court entered an order denying the petition. In so doing, the court accredited the testimony of trial counsel that he counted the images and found over 100 that "could be viewed as child pornography"and that the petitioner never expressed any interest in going to trial.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden

to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial

factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner argues that trial counsel was ineffective for failing to conduct an extensive and adequate review of the evidence "that would be required to ensure that [the petitioner] was pleading to the appropriate gradation of felony." In support, he cites both the testimony of his legal expert that there were, in his opinion, only 72 to 74 images of child pornography and trial counsel's admission that he made no notes on the specific images when reviewing the evidence. The post-conviction court, however, accredited the testimony of trial counsel that he carefully reviewed the images on the thumb drive and found over 100 that he considered to be child pornography. The petitioner has not met his burden of showing that counsel was deficient in his review of the evidence or that he was prejudiced as a result of counsel's alleged deficiency in performance.

The petitioner further argues that his guilty plea was unknowing and involuntary due to the fact that he was "never fully informed by trial counsel of the number of incriminating images on the thumb drive" and that counsel cursed and used "downgrading language" while pressuring him into pleading guilty to "the incorrect gradation of offense." Trial counsel, however, testified that he reviewed with the petitioner the number and type of images he saw on the thumb drive, that the petitioner never expressed any desire to go to trial but instead was interested in the best plea bargain available, and that he never cursed, threatened, or pressured the petitioner. During the plea colloquy, the petitioner affirmed that he understood the rights he was waiving by pleading guilty, that he wanted to enter a best interest guilty plea, and that he realized he would be found guilty of Class B sexual exploitation of a minor based on the facts recited by the prosecutor. The petitioner denied that anyone had pressured or threatened him into entering his plea and remained silent as trial counsel informed the court that he and the petitioner had discussed the facts and that they "would argue it differently than what the state has put together," but that they understood the proof against the petitioner and believed it was in his best interest to plead guilty. The petitioner has not, therefore, shown that his guilty plea was unknowing or involuntary.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to meet his burden of showing that he received ineffective assistance of counsel or that his guilty plea was

unknowing and involuntary.  Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE